# Richmond.

## SMITH v. SMITH.

### March 9, 1911.

1. WILLS—*Testamentary Intent—Declarations of Testator—Identifying Paper as a Will.*—In determining whether the instrument propounded was intended to be testamentary, reference will be had to the surrounding circumstances, and the language will be construed in the light of those circumstances, and if it shall appear under all the circumstances that the instrument was intended to be testamentary, the court will give effect to the intention, if it can be done consistently with the language of the instrument; but if there is nothing on the face of the paper to show its testamentary character, and declarations of the alleged testator are relied upon to show that fact, they must have been made at the time the paper was written, or, at least, must be shown to relate to the identical paper. It must in some way be made to appear satisfactorily that the very paper offered was intended to be a will.

2. WILLS—*Testamentary Intent—Case at Bar—Declarations of Testator.*—Conceding the testamentary capacity of the author, that the writing is wholly in his handwriting, including the signature, and that the beneficiary is sufficiently described, the words "Everything is Lous" which constitute the entire body of a paper written on the front page of a book, are not sufficient to show that the writer intended the paper as a disposition of his property to take effect after his death, and hence cannot be admitted to probate as his will. Nor will the fact that "Lous" referred to his wife, and that a witness had heard him say that he had made a will in favor of his wife alter the result.

Error to a judgment of the Corporation Court of the city of Alexandria, on a motion to probate a will. Judgment for the plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*J. K. M. Norton,* for the plaintiff in error.

*Francis L. Smith* and *Robinson Moncure,* for the defendant in error.

CARDWELL, J., delivered the opinion of the court.

This writ of error brings here for review a judgment of the Corporation Court of the city of Alexandria, admitting to probate in that court a pencil writing claimed to be the last will and testament of George T. Smith, deceased.

The writing in question is on the front page of a book issued by the Southern Railway Company to its employees, in which the employee was to keep certain records as to trains, and is as follows:

"Dec. 24, 1900     Every thing is Lous
"G. T. Smith, 314 South Patrick St. Ax Va."

It appears that G. T. Smith was childless and died in the city of Alexandria in December, 1908, leaving surviving him his widow, Lula G. Smith; his father, Samuel H. Smith; and other relatives.  For a short while after the death of G. T. Smith no will was found, but later his widow and her sister who conducted a boarding house in Alexandria city, were preparing rooms for boarders, and while emptying decedent's trunk, which contained his clothes and personal effects, and which in his lifetime had been used by him for such purposes and had been placed and kept in the garret of the house from shortly after decedent's death, came across the book containing the writing above set out and claimed to be the will of said decedent.  The decedent had been a railroad freight conductor, and had used like books in the course of his employment.  Upon finding said book, the decedent's widow, being in the possession of his real

estate, did not offer the writing in the book for probate as the will of her deceased husband, but did so later and after notice to decedent's father, Samuel H. Smith, and next of kin and heir at law.

Samuel H. Smith contested the probate of the paper as the will of decedent, whereupon the issue of *devisavit vel non* was made up and tried by a jury; and after the proponent of the will had introduced her evidence, the contestant demurred thereto, and the jury rendered the following verdict: " . . . that the paper writing offered for probate as the last will and testament of George T. Smith is wholly in the handwriting of the said George T. Smith, signature as well as the body thereof, and that the said paper writing and every part thereof is the true last will and testament of the said George T. Smith, subject to the opinion of the court upon the questions of law arising upon the demurrer to evidence of Samuel H. Smith, the defendant in the issue."

At a later term of the court the judgment here complained of was entered, overruling the demurrer to the evidence and admitting the paper in question to probate, "as the true last will and testament of George T. Smith, deceased."

That "Lous" mentioned in the paper in question referred to decedent's wife, Lula G. Smith, there is no room for doubt, and while there was some evidence offered by the proponent of the will tending to show that two different pencils were used in writing the body of the instrument and the signature thereto, the jury were warranted in finding that the whole paper, including the signature, was in the handwriting of the said George T. Smith—in fact, this is to be taken as admitted upon the demurrer to the evidence, as well as the fact that the person writing and signing the paper had sufficient intelligence to make a will. The sole question, therefore, for our determination is whether or not the said paper writing is a valid holograph

will? In other words, was this paper designed to be testamentary in character and purpose?

It is a settled rule in this country and in England that in determining whether the instrument propounded was intended to be testamentary, reference will be had to the surrounding circumstances, and the language will be construed in the light of those circumstances; and that if it shall appear under all the circumstances that the instrument was intended to be testamentary, the court will give effect to the intention, if it can be done consistently with the language of the instrument. But while the courts have gone far in construing almost any form of instrument to be a will, we have been unable to find a case in which a paper with nothing on its face to indicate that it was intended to be testamentary was held to be entitled to probate as a holograph will.

The essence of the various definitions of the word "will" as applied to the disposition of one's property after his death, given by lexicographers, text-writers and in the decided cases is: "The legal declaration of a person's mind as to the manner in which he would have his property or estate disposed of after his death; the written instrument, legally executed, by which a man makes disposition of his estate, to take effect after his death." Underhill on L. of Wills, pp. 7, 8; 2 Bl. Com. 499; 4 Kent's Com. 490; Shep. Touch. 399; Schouler on Wills (3rd ed.), sec. 279.

Jarman on Wills (6th ed.), p. 26, says: "But if the instrument is not testamentary either in form or in substance (none of the gifts in it being expressed in testamentary language or being in terms postponed to the death of the maker), and if no collateral evidence is adduced to show that it was intended as a will, probate will not be granted of it as a testamentary document."

In Schouler on Wills, *supra,* it is said: "Papers which are not clearly, on their face, of a testamentary character,

even though signed and attested, require to have the *animo testandi* shown to the satisfaction of the court."

The rule, however, uniformly recognized is that to prove by declaration that a paper was intended as a will, declarations of a testator tending to show that it was intended as a will must have been made at the time that the paper was written, or, at least, must be shown to relate to the identical paper.

The opinion by Staples, J., in *McBride* v. *McBride*, 26 Gratt. 481, says: "It is necessary, however, that the instrument, whatever it may be, whether a note, settlement, or deed, should have been designed to operate as a disposition of the testator's property. That identical paper must have been intended to take effect in some form. It must have been written *animo testandi*. In the language of Judge Cabell, a paper is not to be established as a man's will merely by proving that he intended to make a disposition of his property similar or even identically the same with that contained in the paper. It must satisfactorily appear that he intended the very paper to be his will. Unless it does so appear, the paper must be rejected, however correct it may be in its form, how comprehensive in its details, however conformable to the otherwise declared intentions of the party, and although it may have been signed by him with all due solemnity."

"He must have designed thereby to dispose of his property. He must have looked to that paper as the means by which an object was to be accomplished, and that object the disposition of his property after his death. Unless he intended this, the paper is not his will, whatever he may have called it." See also *Combs* v. *Jolly*, 3 N. J. 625; *Tyles* v. *Tyles*, 2. Nott. & Mc.C. 531; *Daniel* v. *Veal*, 32 Ga. 589.

The opinion by the same learned Judge (Staples) in *Burke* v. *Lee and wife*, 76 Va. 386, says: ". . . a party seeking to maintain a devise must show it by the will itself,

27

and no defects in the language used in the instrument can be supplied by parol proof. The true inquiry is, not what the testator meant to express, but what the words he has used do express. Evidence is, however, always admissible for the purpose of showing the situation of the testator, the state of his family and of his property at the time of making his will, with the view of throwing light upon his intention in cases of doubt and difficulty.

"And evidence may generally be received as to any facts known which may reasonably be supposed to have influenced him in the disposition of his property, and as to all the surrounding circumstances at the time of making his will."

The words, "Every thing is Lous," which constitute the entire body of the paper here, are most reasonably to be interpreted as referring to an existing fact, and might under certain conditions be considered as having reference to a purpose on the part of the writer of those words to pass everything that he owned in the way of property to the ownership of "Lous," his wife, either by gift or devise; but there are no words of gift to be found in this paper and nothing from which it could be reasonably determined that the writer intended the paper as a disposition of his property to take effect after his death.

Looking then to the attending circumstances, or rather to the oral testimony, which may be considered in determining the question, whether or not George T. Smith intended this paper as a testamentary disposition of his property after his death, we find that while the witnesses testify that the whole paper is in the handwriting of Smith, though written with different pencils and perhaps at different times, there are no facts testified to which throw any light upon his intention when he wrote what is found in the back of the book which contains this paper.

Luther Carter, a real estate agent of Alexandria, who

claims to have known and seen right much of Smith, after testifying on cross-examination that the words "Every thing is Lous," did not look to him as much like Smith's handwriting as the signature, says that he heard Smith state that he had made his will in favor of his wife.

Henry M. Parish, who claims to have been well acquainted with Smith, says that he mentioned to Smith on several occasions the matter of joining the brakemen, or Brotherhood of Railroad Trainmen, but he always said he had never thought about it; but witness remarked to him on several occasions that he carried insurance with the conductors, and that Smith ought to take out insurance with the brakemen, so that in case he should retire he would have some insurance to leave to his wife; whereupon Smith remarked: "It don't make any difference about that.   I have plenty for my wife to live on if I die to-day.   I have a good home and have some money, and I don't bother with any insurance in any order at all."

It seems that George T. Smith, who had been a freight conductor and also a passenger conductor on the railroad, had gotten into some trouble, and was then running as a brakeman when he had this talk with Parish, who also was in the employ of the railway company.

There is also evidence that George T. Smith appreciated the efforts his wife had been making for him from the the time of his marriage, but we do not think that this testimony throws any light upon the intention of Smith in making the writing found in the book which had been furnished to him by the railway company for his report of the arrival and departure of trains from time to time.   There is not enough in the evidence to identify this paper as the will that he had intended to make, or had made, of which he might have been speaking when talking to Parish, as (quoting from Judge Staples in *McBride* v. *McBride, supra*) "a paper is not to be established as a man's will merely by proving that he intended to make a disposition

of his property similar or even identically the same with that contained in the paper. It must satisfactorily appear that he intended the very paper to be his will."

In *Smith* v. *Spiller,* 10 Gratt. 318, William H. Spiller executed his bond to Francis Smith for $4,000, payable four years after its date, and on the back of this bond there was found this memorandum which was shown to have been written thereon by Francis Smith at the time that the bond was executed to him, to-wit:

"Memorandum.—If I do not collect the money due on the within note of my nephew Hickman Spiller during my life, then it is never to be collected; and I give him that sum.

"(Signed)    FRANCIS SMITH.

"Sept. 30, 1823."

This court held this endorsement on the back of this bond not to be of a testamentary character, but a part of the bond and irrevocable without destroying the bond, and this ruling was made upon full recognition of the rule, that whether a paper of a doubtful character was designed to operate as one instrument or as another may be determined by all the circumstances attending the transaction, and the cotemporaneous conduct and declarations of the parties evincive of their purposes and motives, as showing what kind of instrument was within their contemplation and design; and in that case there were some declarations made by the parties at the time the paper in question was written and signed; but in the case here, beyond what we have already mentioned as having been proven, there is not a particle of testimony going to identify the paper in question as the will of George T. Smith.

In *Cope* v. *Cope,* 45 Ohio St. 464, 15 N. E. 206, the syllabus is: "Where the provisions of a will in each and all of its items are, when considered as an entirety, so obscure that, with the aid of all the light that can be shed on it by the extraneous circumstances, no definite idea can be formed of the intention of the testator in any of the dispositions

he has attempted to make, it should be held void for uncertainty, and the property left to descend and be distributed according to law."

In *Clarke* v. *Ransom,* 50 Cal. 595, greatly relied on here by the defendant in error, the words,

"Dear Old Nance: I wish to give you my watch, two shawls, and also five thousand dollars.

"Your old friend,    "E. A. GORDON,"

were held to be testamentary in character, and as there were no words of revocation found in the paper it was admitted to probate as a codicil to a will which Mrs. Gordon had theretofore made disposing of an estate of about $170,000, and appointing an executor who it seems was also the devisee and distributee of almost the entire estate. It was made to appear from the testimony that the paper quoted above was written by Mrs. Gordon when ill and but a few days before her death, and was in accordance with verbal instructions that she had already given Clarke, her executor, as to what the testatrix wanted Miss Ransom, whom she always called "Old Nance" to have of her estate, and when she wrote this paper and delivered it to Miss Ransom, she was requested not to show it to the executor, Clarke, until after Mrs. Gordon's death, and not then unless Clarke refused to carry out her verbal request. We think this a very different case from the one before us, but even in that case there was a strong dissenting opinion by Wallace, C. J.

Upon the whole case, we think that the paper here in question cannot be maintained as the last will and testament of George T. Smith, and, therefore, the judgment of the Corporation Court of the city of Alexandria upon the demurrer to the evidence must be reversed and annulled, and this court will enter the judgment the lower court should have entered in favor of plaintiff in error.

*Reversed.*