# Richmond

## Norva Marie Fenton v. Elmer E. Davis, Adm'r, etc.

### April 26, 1948.

### Record No. 3315.

Present, Hudgins, C. J., and Eggleston, Spratley, Buchanan and Miller, JJ.

The opinion states the case.

*Jas. G. Martin & Sons* and *H. Lawrence Bullock*, for the plaintiff in error.

*J. Carlton Hudson* and *Nathaniel T. Green*, for the defendants in error.

HUDGINS, C. J., delivered the opinion of the court.

This writ of error is to an order probating the following paper writing as the holograph will of Cortelyou H. Warren.

"1-31-47
"To whom it may concern—
"Being of sound mind & body—
"I will.
   "All of my personal property and insurance to my mother Corra Lee Warren 9016 Cottage Toll Road
         "Norfolk Va.—
         "CORTELYOU H. WARREN
"P. S.—Real estate & Government
      retirement—
      Insurance I. B. E. W."

Elmer E. Davis qualified as administrator c. t. a. of decedent's estate.

Mrs. Norva Fenton, only child of decedent, contended in the lower court and contends here (1) that the alleged holograph will was not proved to be wholly in the handwriting of the decedent by "at least two disinterested witnesses;" (2) that the writing after the signature—"P. S.—Real estate & Government retirement—Insurance I. B. E. W." —was not authenticated and should not have been admitted to probate as a part of the will; (3) that the oral statements of the decedent at the time the will was executed and given to his mother were improperly admitted in evidence.

Eight witnesses testified as to the handwriting of decedent —five for proponents and three for contestant.

Contestant contends that three of the five witnesses, namely, Carra Lee Warren and J. H. Warren, parents of decedent, and J. Carlton Hudson, one of attorneys for proponents, were not disinterested witnesses within the meaning of the statute. It is unnecessary to decide or even discuss this question because the decision of the trial court is supported by the testimony of C. A. Weakley and Jack Dollar, two disinterested witnesses.

C. A. Weakley testified that he was an employee of the Southern Bank of Norfolk and that he was familiar with the handwriting of the testator. When first shown the alleged will he said it was similar but not well written according to the signature on file at his bank. He asked permission to leave the stand and make a further study and comparison of the writing with the acknowledged signature of testator in his possession. His testimony while he was on the stand the second time was neither positive nor convincing. He seemed undecided in his own mind whether or not the paper offered was in the handwriting of the testator; but after leaving the stand the second time he had access to different authenticated papers written by the testator, and, after studying them alone, he asked permission to go back on the witness stand and said:

"A. I have given it some more consideration and looked at it further, and I find his writing—it is his writing, only it was written in a different feeling. He was not feeling just right when he was writing it. In other words, He was— well, his spirits were low. In other words, he didn't put full pressure on the paper.

"Q. Is that paper, the will, in the handwriting of Mr. Warren, or not?

"A. I would say yes.

"Q. You haven't had any conversation with either of us since you got off the stand?

"A. No."

Jack Dollar testified that he was an electrician and had

worked with testator for four or five years; that he had received a number of orders written by the testator; that he was familiar with testator's handwriting and that the paper writing offered for probate was in the handwriting of the testator. He first said that he could not make out the first word on the second line and he was not certain that it was in the handwriting of decedent. Later he was asked by the court:

"Q. Is it your opinion that the paper offered as a will is written entirely by Mr. Warren?

"A. I would say that it was, yes."

In addition to the testimony of these two witnesses and the three alleged interested witnesses, the trial court compared duly authenticated documents written by decedent with the will. Hence, if we exclude from our consideration the entire testimony of the three alleged interested witnesses, there is ample evidence to sustain the decision of the trial court on the issue that the paper was wholly in the handwriting of the testator and that part which appears above the signature was a holograph will, executed as required by Code, section 5229.

Proponents contend that that part of the writing which appears after the signature of the testator is nothing more than a change, alteration, or interlineation of the instrument which appears above the signature, and therefore it should be considered an integral part of the original will.

In *Triplett* v. *Triplett*, 161 Va. 906, 172 S. E. 162, it was held that a holograph will containing erasures and interlineations in the handwriting of the testator made after it was signed and witnessed could not be probated as an attested will, but could be probated as a holograph will if the erasures and alterations were made in the writing of the testator and if his name remained "* * * in such manner as to manifest that it was intended as a signature. The will then becomes re-executed with all the changes as valid and subsisting parts of the new will."

The rule in Virginia is that "* * * the finality of testamentary intent must be ascertained from the face of

the paper, and extrinsic evidence is not admissible either to prove or disprove it." *Hamlet* v. *Hamlet*, 183 Va. 453, 461, 32 S. E. (2d) 729.

The only logical conclusion to be drawn from inter-lineations and additions in a holograph will which are in the handwriting of the testator above the signature is that the testator intended for his original signature to be a re-execution of the will with interlineations and additions included. But when it appears from the face of the will that there is a testamentary disposition of all or part of testator's estate appearing after the signature and nothing more, no logical inference of re-execution or re-authentication can be drawn.

The place of signature on a writing offered for probate as a will has been the subject of much judicial discussion. This discussion stemmed from the leading English case of *Lemayne* v. *Stanley* (1681), 3 Levintz 1, in which it was held that a name appearing at the top or beginning of the will was sufficient if other evidence on the face of the instrument indicated that the testator intended his name so written to be a signature. In that case the will was wholly in the handwriting of the testator. It was published and acknowledged in the presence of four sub-scribing witnesses in whose presence the seal of the testator was affixed, but no name written at the close. Some time after this decision was announced the English statute was changed to require the signature of a will to appear at the end or close of the completed document. The statutes in force in many States require both attested and holograph wills to be "signed at the end," or "subscribed at the end."[1]

The statute in Virginia does not designate the place of signature. It does provide that "no will shall be valid unless it be in writing and signed by the testator, or some other person in his presence and his direction *in such manner*

[1] Arkansas, California, Connecticut, Idaho, Kansas, Kentucky, Montana, New York, North Dakota, Oklahoma, Pennsylvania, Utah, South Dakota, and others.

*as to make it manifest that the name is intended as a signature \* \* \*.*" Code, section 5229. (Italics added.)

This statute is the legislative affirmation of the decision in *Waller* v. *Waller*, 1 Gratt. (42 Va.) 454, 42 Am. Dec. 564, to the effect that it was not absolutely essential for the signature to be made at the end of the instrument provided it affirmatively appeared upon the face and from the frame of the instrument that the name, wherever it appeared, was intended to be a signature, thereby authenticating the will. Judge Allen, speaking for the court in that case said:

"\* \* \* The instrument may seem to be fully written, may contain a disposition of the entire estate, may contain a clause appointing executors, and a residuary clause, be dated, but yet wanting a signature shewing on the face of the instrument an authentic signing—who can say it is a complete, concluded act? \* \* \* When, therefore, it is admitted in any given case that the formalities established, do not prove testamentary intent, that something further and in addition to those formalities, must be adduced to satisfy the mind that the paper in question was a concluded act, and was intended to be a final disposition of his estate, without anything more, the paper in question is not a will executed according to the statute, and cannot be received as a statutory disposition of his estate.

\*         \*         \*         \*         \*         \*

"I do not wish, however, to be understood as holding a literal signing at the foot or end of the instrument as absolutely necessary in all cases. The signing must be such as, upon the face, and from the frame of the instrument, appears to have been intended to give it authenticity. It must appear that the name, so written, was regarded as a signature; that the instrument was regarded as complete without further signature. And the paper itself must shew this."

The statute requiring a will to be signed has a two-fold purpose: The first is to connect the testator with the paper; the second is to establish the finality and completion of the testamentary intent. In a holograph will proof of the hand-

writing and the name of the testator connects him with the will, but the signature must appear on the face of the will in such manner as to establish the finality of the testamentary intent. In applying these principles it has been held in numerous cases that the name appearing in the beginning of the will or in the body of the will without more was not an execution in the form required by statute. Most of the Virginia cases were reviewed in two recent decisions, one by Justice Spratley in *McElroy* v. *Rolston*, 184 Va. 77, 34 S. E. (2d) 241, and the other by Justice Eggleston in *Hamlet* v. *Hamlet*, 183 Va. 453, 32 S. E. (2d) 729.

In *Dinning* v. *Dinning*, 102 Va. 467, 46 S. E. 473, the holograph will concluded with the clause, "I, William Dinning, say this is my last will and testament." The signature was at the end of the disposing part of the will but there were additional words after the signature as indicated. It was held that the words after the signature did not destroy the manifest intent appearing on the face of the will, that the name was intended as a signature to it.

The only logical deduction from the principles enumerated in the prior decisions of this court is that the name is not to be considered a signature to a will unless it is apparent on the face of the instrument that it was intended as such, and then the signature is only an authentication as to so much of the writing as it was designed to authenticate. There is nothing apparent on the face of the instrument in this case to indicate that the testator intended to authenticate anything that appeared after his signature.

Proponents contend that the letters "P. S." have great significance. It is a matter of common knowledge that P. S. is an abbreviation for "postscript," which according to Webster's New International Dictionary (2d) when used as a noun means "a note or series of notes appended to a completed letter, book, or the like, usually giving an afterthought or additional information." When used as a verb it means "to add to." Changes or additions to a will are usually made by a codicil. The same authority defines

"codicil" as "an instrument made subsequent to a will and modifying it in some respects—and forming a part of it, superseding it so far as inconsistent with it."

The writing on the instrument appearing after the signature in this case, standing alone, conveys no meaning. If, as contended by proponents, the testator intended to make a testamentary disposition of his real estate, government retirement, insurance I. B. E. W., then testator began a codicil which he did not complete. It is impossible to look at the writing after the signature and determine what disposition, if any, the testator intended to make. If he did intend to make an addition or change in his will, then he attempted to write a codicil which is not properly executed.

Code, section 5226, provides: "Except where it would be inconsistent with the manifest intent of the legislature, the word 'will' shall extend to a testament, and to a codicil, and to an appointment by will, or by writing in the nature of a will, in exercise of a power; and also to any other testamentary disposition."

This section and section 5229 require the same formalities in the execution of a codicil as in the execution of the will itself. The abbreviation "P. S." and the writing appearing after the signature indicate, on the face of the instrument offered for probate, that they were written after the signature was made and there is nothing on the face of the paper which makes it manifest that the signature authenticated the words appearing after it. According to the construction consistently given these statutes by this court, the name appearing on a holograph will is not to be considered a signature unless it appears to have been intended as such, and then is only a signature as to so much of the paper as it was designed to authenticate.

The soundness of the rule in Virginia excluding parol evidence tending to show testamentary intent is apparent from the record in this case. The beneficiary stated in one part of her testimony that after the testator had completed his will and added the P. S. he said to her, "Mother, this is my will, and if you live longer than I do

I want you to have everything I have." "He turned and * * * walked out." In another part of her testimony she said, "He never got up from the table. He said, 'I am sorry about this, but I will fix this for you Monday right. I will get a regular form and fix this right for you Monday.' That is the last words he said about it."

The two statements are inconsistent and neither is pertinent to establish the testamentary intent.

It was proved by at least two disinterested witnesses that the instrument was wholly in the handwriting of the testator. It appears on the face and from the frame of the paper that it was a completed instrument so far as the disposition of testator's personal estate was concerned with the name subscribed in such manner that it appeared manifest that it was intended as a signature.

The incomplete sentence appearing on the instrument after the signature does not affect the validity of the disposition of the property named and described in the will above the signature. In other words, if a codicil is not properly executed, it is invalid, but its invalidity does not affect the validity of a will which has been executed in the manner prescribed by statute. 1 Page on Wills, Life Time Ed. 560; *Parrott* v. *Parrott*, 270 Ky. 544, 110 S. W. (2d) 272; *Wikoff's Appeal*, 15 Pa. 281, 53 Am. Dec. 597; *Taylor's Estate*, 230 Pa. 346, 79 A. 632, 36 L. R. A. (N. S.) 66.

The order of the trial court is modified by eliminating from probate all words appearing on the instrument after the signature. So modified, the order of the trial court is affirmed.

*Modified and affirmed.*