# Richmond

## Thelma C. Quesenberry, Et Al. v. Mabel C. Funk, Et Al.

June 11, 1962.

Record No. 5419.

Present, All the Justices.

*Eugene L. Nuckols* (*Crowell, Deeds & Nuckols,* on brief), for the appellants.

*Philip M. Sadler* and *James C. Turk,* for the appellees.

WHITTLE, J., delivered the opinion of the court.

This chancery suit was instituted in the Circuit Court of Pulaski County by five of the heirs at law of Walter S. Coalson (appellees) who died testate in October, 1958. The suit was filed against Thelma C. Quesenberry, another heir at law of Coalson, and her husband, W. Eugene Quesenberry, executor under Coalson's will.

The suit involved the ownership of funds in a savings account which before Coalson's death stood in his name and the name of Mrs. Quesenberry, jointly, with the right of survivorship. Complainants alleged that the funds in the joint account should be a part of decedent's estate while the respondents contended that the money belonged to Mrs. Quesenberry.

The chancellor heard the evidence *ore tenus* and on the 27th day of February, 1961, entered a decree adjudicating that the funds in the savings account were a part of the assets of the Coalson estate.

Following the entry of this decree Mrs. Quesenberry filed a petition in the Circuit Court praying that the joint savings account instrument be declared a codicil to Coalson's will. After considering the instrument and hearing evidence on its execution the court, by its decree of June 16, 1961, denied the prayer of the petition, the effect of which was to reaffirm that the money in the savings account was an asset of the Coalson estate. Appeals were noted to the entry of both decrees.

The questions raised by the Quesenberrys in their assignments of error are: (1) Should the motion to strike appellees' evidence have been sustained? (2) Was the contract between the bank and the "joint owners" ambiguous so it could be altered by oral evidence? (3) Was the intent manifested in the instrument that the survivor should be the owner as provided in § 55-21, Code of Virginia? (4) Did the evidence show a gift *in praesenti* of the savings account? (5) Was the instrument executed by Walter S. Coalson a testamentary disposition of the savings account, and if so, was it properly executed and witnessed?

It is conceded that at the time the savings account was changed from Coalson individually to Coalson and Mrs. Quesenberry jointly, Coalson had been ill for a long period of time; that he was infirm and unable to attend to his business affairs; and that all monies in the savings account were created by Coalson.

Mrs. Lucille Amos, a bank employee, testified that when Mrs.

Quesenberry called for the card at the bank she said that Mr. Coalson was ill and not able to come to the bank and do his banking, and that he wanted the card so he could make it a joint account in order that she (Mrs. Quesenberry) could make withdrawals for him during his illness.

John William Utt, an employee of the bank who was a witness to Coalson's mark on the joint savings account card, testified that Coalson said the reason he was signing the card was because he was not able to come to the bank and take care of his business, and that he wanted it fixed so that Mrs. Quesenberry could look after his business "and keep his bills and everything paid up, and look after his needs."

On cross-examination both Mrs. Quesenberry and her husband admitted that Utt was correct in his testimony concerning Coalson's statement as to his reason for making the change in the savings account.

Mrs. Quesenberry's testimony was to the effect that her father changed the account from his name to the joint account, having in mind the purpose of giving her anything that was left in the account after his death. She admitted that the money in the account belonged to her father and said "if he was living and able to take care of his business or asked for it I would have gladly [turned it over to him] because it was his."

The record discloses that W. Eugene Quesenberry, husband of Thelma C. Quesenberry and executor under the will, included the money in the assets of the Coalson estate until an official of the bank suggested that the purport of the card which left anything that remained in the account to the survivor inured to Mrs. Quesenberry's benefit, after which the executor excluded the money from the estate and joined his wife in her contention that, she being the survivor, the money belonged to her.

■ Under Question (1)—"should the motion to strike appellees' evidence have been sustained," the Quesenberrys contend that the court should have struck any evidence varying the stipulation on the savings account card. In taking this position they rely solely upon the form of the deposit as evidenced by the deposit card. This is contrary to our holding in *King, Ex'x* v. *Merryman, Adm'x,* 196 Va. 844, 859, 86 S. E. 2d 141, 149. In that case we rejected the theory now advanced by the Quesenberrys and held that in determining the ownership of money such as here involved subjective intent and not form controls. There we held that in the absence of any statutory

presumption we would adhere to the rule that when a person deposits his money in the bank to the credit of himself and another, payable to the order of either, or to the survivor, the rights and interests of the depositors as between themselves are dependent upon whether the owner of the money intended to make a gift to the other, or whether the account was entered in joint form in accordance with a contract or for other purposes. This rule was reaffirmed in *Wrenn* v. *Daniels*, 200 Va. 419, 106 S. E. 2d 126.

At the conclusion of appellees' evidence there arose a presumption that the bank account was set up for the convenience of Coalson and that the money became a part of his estate. The burden was then on the Quesenberrys to show that Mrs. Quesenberry was entitled to the money for some reason other than through the form of the deposit.

In *King* v. *Merryman, supra*, we quoted with approval from 38 C.J.S., Gifts, § 50, page 836: " 'Where the deposit by a person is in the name of himself and another, not his wife, the presumption is that it was done for the purposes of convenience only, and this presumption is strengthened by the illness or infirmity of the depositor.' "

It is interesting to note that since our decision in *King* v. *Merryman, supra* (March, 1955), the legislature in 1956 passed a statute (§ 6-55.1, Code of Virginia, 1950, and Acts amendatory thereto) providing that a deposit made in a bank in the names of a husband and wife, payable to either, or payable to the survivor, shall, upon the death of either spouse, be vested in the survivor. This statute in no way affected joint accounts in the names of those other than husband and wife.

The court properly overruled the Quesenberrys' motion to strike appellees' evidence.

Questions (2) and (3) presented by the Quesenberrys are: "(2) Was the contract between the bank and the 'joint owners' ambiguous so it could be altered by oral evidence?", and "(3) Was the intent manifested in the instrument that the survivor should be the owner as provided by § 55-21, Code of Virginia?" [1]

Here again the Quesenberrys are asking us to decide that Mrs. Quesenberry is entitled to the money because of the wording on the

[1] § 55-21. EXCEPTIONS TO PRECEDING SECTION.—The preceding section shall not apply to any estate which joint tenants have as executors or trustees, nor to an estate conveyed or devised to persons in their own right when it manifestly appears from the tenor of the instrument that it was intended the part of the one dying should then belong to the others. Neither shall it affect the mode of proceeding on any joint judgment or decree in favor of or on any contract with two or more one of whom dies.

card. This card, signed by Walter S. Coalson and Thelma C. Quesenberry, was furnished by the Pulaski National Bank. It was a printed form. The wording on the card was the language employed by the bank, and it is not ambiguous. It sets forth clearly the purpose of the card which was for the protection of the bank, and was prepared by the bank to comply with Code, § 6-55.[2]

This section was commented upon in the case of *King* v. *Merryman, supra,* at page 850, where we held that the section established no presumption as to the ownership of the money as between two persons named in a joint account, with or without an extended right of survivorship. The section was written for the protection of the bank and is not declaratory of the rights of the depositors in the funds as between themselves.

We therefore hold that parol evidence was admissible to show the intent of the person setting up the account.

■ The fourth question raised by the Quesenberrys is: "Did the evidence show a gift *in praesenti* of the savings account?"

The Quesenberrys argue that in case of a joint bank account it has been held in some jurisdictions that the gift is complete if the donee is vested with an equal interest in and control over the funds. However, appellees argue with merit that from the evidence in this case Walter S. Coalson never intended to vest Mrs. Quesenberry with any interest in or control over this account during his lifetime, nor did she claim or assume such control.

The essential elements of a gift *inter vivos* are: (1) The gift must be of personal property; (2) possession of the property must be delivered at the time of the gift to the donee, or someone for him, and the gift be accepted by the donee; (3) the title to the property must vest in the donee at the time of the gift; and the donor must be divested of and the donee invested with the right of property in the subject of the gift; it must be absolute, irrevocable and without any reference to its taking effect at some future period. 9 Mich Jur., Gifts, § 8, page 188; *Taylor, Adm'x* v. *Smith,* 199 Va. 871, 874, 875, 102 S. E. 2d 160, 162, 163.

---

[2] § 6-55. DEPOSITS IN NAMES OF TWO OR MORE PERSONS, OR SURVIVORS; HOW DISCHARGED.—When a deposit has been made, or shall hereafter be made, in any bank or trust company transacting business in this State, under the names of two or more persons, payable to either, or payable to the survivor or any survivor, such deposit, or any part thereof, or any interest or dividend thereon, may be paid to any of such persons, whether the other or others be living or not, and the receipt or acquittance of the person so paid shall be a valid, sufficient and complete release and discharge of the bank or trust company for any payment so made.

The record discloses that both Mrs. Quesenberry and Coalson considered the entire account his during his lifetime, and that Mrs. Quesenberry was a mere custodian of the book for convenience only.

It will be remembered that the testimony of John William Utt as to the statements made by Coalson at the time he signed the card shows that Coalson had no idea but that the money was to be for his own exclusive use and needs during his lifetime. And on cross-examination Mrs. Quesenberry admitted that she considered the money belonged to her father during his lifetime; all of which is contrary to the theory of a gift *in praesenti*.

The trial court heard the evidence *ore tenus* and had the opportunity to see and hear the witnesses, and the court's finding that the evidence falls short of showing that an immediate effective interest was created in Mrs. Quesenberry during Coalson's lifetime either by contract, trust, or gift, should not be disturbed.

The fifth question is: "Was the instrument executed by Walter S. Coalson a testamentary disposition of the savings account, and if so, was it properly executed and witnessed?"

This question advances an argument inconsistent with those heretofore asserted. Apparently Mrs. Quesenberry was content to have the funds distributed as a part of her father's estate until an officer of the bank suggested either to her or her husband that she might own the funds by reason of the form of the deposit.

In any event, the writing executed by Walter S. Coalson on May 3, 1954, does not bear the stamp of testamentary intent. It shows on its face that it is a printed bank form. Its purpose was for the protection of the bank and the convenience of customers desiring to open a joint bank account.

Although no particular form is necessary to constitute a valid will or codicil to a will, it must satisfactorily appear from the document offered as a will or codicil that the decedent intended by the paper itself to make a disposition of his property after his death in favor of the party claiming thereunder. The finality of testamentary intent must be ascertained from the face of the paper, and extrinsic evidence is not admissible to prove or disprove it. *Fenton* v. *Davis*, 187 Va. 463, 467, 47 S. E. 2d 372, 374.

Normally, the question of testamentary intent is a factual question to be determined by the triers of the facts, but it must appear from the face of the paper that it is testamentary in character. *Poindexter* v. *Jones*, 200 Va. 372, 376, 106 S. E. 2d 144, 147.

The creation of a joint bank account by one person for himself

and another, as joint owners, with the right of survivorship, as here involved, is not a testamentary instrument. It is not subject to the statutes relating to the execution of wills where the other joint owner's interest in or title to the account arises or vests immediately as was heretofore claimed by Mrs. Quesenberry. 94 C.J.S., Wills, § 148, page 931.

Not only is the paper writing in this instance lacking in testamentary character, but it does not meet the statutory requirements for the execution of wills. The law requires that the signature of the testator must be witnessed by two competent witnesses present at the same time, and each of the attesting witnesses must sign in the presence of the testator. In *Ferguson* v. *Ferguson*, 187 Va. 581, 47 S. E. 2d 346, an attesting witness is defined as one who signs his name to an instrument for the purpose of proving and identifying it, or one who signs with the intention of being a witness to the act in question.

The savings account card in this instance was signed by Thelma C. Quesenberry as the supposed joint owner of the funds, and the name of Walter S. Coalson was signed by his mark (X), and witnessed by John William Utt, he being the only witness to the signature of Coalson.

The court properly held that the instrument executed by Walter S. Coalson was not a testamentary disposition of the savings account.

For the reasons stated the decrees of the trial court are

*Affirmed.*