# Richmond

Trula Short, Executrix, Etc., Et Al. v. A. H. Still Investment Corporation.

Trula Short, Executrix, Etc., Et Al. v. A. H. Still Investment Corporation.

March 7, 1966.

Record Nos. 6098, 6099.

Present, All the Justices

*Robert T. Winston* (*Leslie M. Mullins,* on brief), for the appellants.

*E. D. Vicars,* for the appellee.

CARRICO, J., delivered the opinion of the court.

This litigation was commenced on August 13, 1962, when Trula Short, Executrix of the Estate of Dr. N. H. Short, and Trula Short, in her own right, filed a bill of complaint against A. H. Still Investment Corporation. (Record No. 6099.)

The bill alleged that a controversy had arisen between the parties over the construction of a provision in a deed of trust dated January 10, 1961, executed by the Still Corporation to secure the payment of a promissory note of the same date, payable to Dr. Short. It was alleged that the note required monthly payments of $1000 each but that the deed of trust provided that upon the death of Dr. Short the payments would be reduced to $500 monthly. It was further alleged that following the death of Dr. Short, the Still Corporation had reduced its monthly payments to $500 each.

The bill prayed that the provisions of the deed of trust reducing the monthly payments upon the death of Dr. Short be declared void, invalid and ineffective; that the Still Corporation be ordered to bring up to date the payments of $1000 monthly, and that, in event of its failure to do so, the entire balance remaining on the note be declared due.

By subsequent amendments to the bill of complaint, it was alleged that default had occurred in the payment of the installment of $1000 due in September, 1961, and of the installment due in May, 1963, thus accelerating the payment of the remaining balance of the debt.

While the bill of complaint was pending, Mrs. Short, as executrix, on January 24, 1964, directed the trustee under the deed of trust to advertise and sell the property covered thereby, claiming that "Default has been made in the time of payment of one of the install-

ments of $1000.00." The trustee proceeded to advertise the property for sale. The Still Corporation then filed a bill of complaint praying that the foreclosure sale be enjoined. (Record No. 6098.)

The parties took the evidence by depositions which were submitted to the chancellor under a stipulation that the evidence so taken would be considered applicable to the bills of complaint in both cases.

The chancellor ruled that the disputed provisions of the deed of trust were valid contractual obligations; that Mrs. Short had waived any default which may have occurred in payments due under the promissory note, and that she was not entitled to accelerate the payment of the remaining balance of the debt. The foreclosure sale was permanently enjoined "unless subsequent grounds arise for the enforcement of said deed of trust." From final decrees embodying these rulings, we granted these appeals.

The evidence shows that Dr. Short and A. H. Still, president of the Still Corporation, were close personal friends. Dr. Short agreed to advance to Still the funds necessary to purchase property in Norton and to construct thereon a motel and office building.

Periodic advancements were made by Dr. Short from June, 1959, to August, 1960, and on each occasion a promissory note and deed of trust were executed by the Still Corporation to cover the individual amount so advanced. Finally, when a total of $125,000 had been advanced, Dr. Short and Still agreed that $10,000 would be added to the amount owing to cover accrued interest and that a new note and deed of trust would be prepared and executed to cover the consolidated indebtedness.

A payment of $1000 was made on the debt by the Still Corporation, so that when the new note and deed of trust were prepared and executed on January 10, 1961, they were in the amount of $134,000.

Payments on the note were to be applied to the principal of said note and after the principal was paid in full, then the accrued interest was to be paid monthly until paid in full.

The note was executed by the Still Corporation alone but the deed of trust was executed by both the corporation, the grantor, and by Dr. Short, the beneficiary. The deed of trust contained the provisions which are in dispute here, which were inserted in the trust at the direction of Dr. Short. The provision read as follows:

"It is agreed and understood by and between the parties hereto that in the event of the decease of the said N. H. Short, then the monthly payments hereinabove mentioned shall be reduced to Five

Hundred ($500.00) Dollars per month, both as to principal and interest as specified and the time for payment thereof extended accordingly; also it is further agreed and understood that upon the decease of the said N. H. Short, the balance due under the Deed of Trust shall be payable to and become the property of Trula H. Short, wife of the said N. H. Short, for and during her natural life; and also it is further agreed and understood that upon the decease of the said Trula H. Short the balance due under the Deed of Trust shall be payable to and become the property of Gladys Katherine Shumate for and during her natural life, and upon the decease of the said Gladys Katherine Shumate, then the entire obligation and indebtedness by said Deed of Trust shall be extinguished, and all notes, agreements or other evidence of indebtedness against said A. H. Still Investment Corporation be cancelled by my executor or administrator and delivered up to the said A. H. Still Investment Corporation, without payment of the same or any part thereof; it being the intention of the said N. H. Short that this proviso is testamentary in nature, and recognizing the same as testamentary and intending it to take effect after his decease, he joins and signs this Deed of Trust to clearly designate his intentions in respect to the same."

The note provided that the monthly payments of $1000 each were to commence on February 10, 1961, and continue on the tenth day of each month thereafter. However, Dr. Short agreed to defer commencement of the payments until September 10, 1961. The payment due on September 10 was not made by the Still Corporation because of an oversight on its part.

Dr. Short died on September 18, 1961, and his widow qualified as executrix under his will.

Following Dr. Short's death, the Still Corporation made monthly payments of $500 each to Mrs. Short on the promissory note. Mrs. Short accepted the payments but insisted that $1000 monthly should be paid.

In October, 1962, after Mrs. Short had filed her bill of complaint, it was called to the attention of the Still Corporation that it had failed to make the $1000 payment due in September, 1961. The payment was made immediately to Mrs. Short and she accepted the check therefor but did not cash it. On October 30, 1962, Mrs. Short amended her bill of complaint, alleging that the failure to make the September, 1961, payment constituted a default in the note, causing the remaining balance thereon to become due and payable.

On the late afternoon of May 10, 1963, Mr. Still deposited in the

mail to Mrs. Short a check in the sum of $500 for the monthly payment due in May. The letter was delivered to Mrs. Short the next day but was apparently hidden in a magazine delivered at the same time. Mrs. Short maintained that she had not received the payment and, in the latter part of June, Still stopped payment on the check and issued Mrs. Short a new one in its place. Finally, in July, Mrs. Short found the first check. In the meantime, however, about June 1, Mrs. Short gave the Still Corporation notice that she was declaring the entire remaining balance on the note to be due for failure to make the $500 payment due in May. On September 12, 1963, Mrs. Short further amended her bill of complaint to set up the alleged default in the May payment.

Mrs. Short first contends that the chancellor erred in finding that the provisions of the deed of trust, reducing the monthly payments after the death of Dr. Short, constituted valid contractual obligations.

Mrs. Short argues that the provisions of the deed of trust were testamentary in nature and that, since the instrument was not properly executed as a will, the provisions are invalid and void.

It is true that the language at the end of the disputed paragraph, "It being the intention of the said N. H. Short that this proviso is testamentary in nature," when viewed alone and out of its true surroundings might draw the reader to the conclusion that a purely testamentary act was intended.

But as Mr. Justice Holt said in *Harlan* v. *Weatherly*, 183 Va. 49, 53, 31 S. E. 2d 263, "Many valid contracts have a testamentary flavor." And courts do not view the solemn writings of parties merely with a singular eye to determine what was their intention and what effect they wished to produce by their actions.

We must, just as did the chancellor, look at the whole provision, not just the isolated ending clause; at the whole instrument, not just the single paragraph in dispute, to glean the intention of the parties and to give effect to what is found to be their intended purposes. And it is our duty to adopt that construction of the provisions in question which will sustain them, rather than defeat them, if that is at all possible. *Ga Nun* v. *Palmer*, 216 N.Y. 603, 111 N.E. 223, 225; 17 Am. Jur. 2d, Contracts, § 258, p. 658, § 259, p. 660.

Mr. Justice Miller reviewed the fundamental differences between a will and a contract in *Spinks* v. *Rice*, 187 Va. 730, 741-742, 47 S. E. 2d 424, where he wrote:

" 'The rule of construction in determining whether an instrument is

a will or contract is, that if it passes a present interest, it is a deed or contract; but if it does not pass an interest or right until the death of the maker, it is a testamentary paper.' 89 Am. St. Rep. 488.

" 'In determining the question whether an instrument is a will or a contract, the time when the property rights under the instrument attach is the true test and not the time of performance. * * * Where the instrument contains no words that create the relation of debtor and creditor in the lifetime of the parties thereto, but the words employed simply import a posthumous disposition of a part of the estate of the maker of the instrument, it is testamentary in character and will be given effect as a will if executed with the formalities required by the statute.' Thompson on Wills, Second Edition, Sec. 14, p. 23.

" 'In general the test of testamentary character is . . . does the paper show an intention to presently create an interest in another though enjoyment is postponed, or does it create no such interest but merely direct what shall be done after the maker's death, being entirely ambulatory until that time? This is frequently a fine and difficult distinction to draw, but it is often vital to the success of the instrument. . . .' Atkinson on Wills, Sec. 64, p. 151."

Bearing these principles in mind, we focus our attention upon the disputed provisions of the deed of trust and find no difficulty in agreeing with the conclusions of the chancellor. We are of opinion, as was he, that the provisions reducing the monthly payments upon the death of Dr. Short were contractual, and not testamentary, in nature and were valid and binding upon the parties.

The provisions for the reduced payments commenced with the words, "It is agreed and understood by and between the parties hereto." These are words of contract, constituting language of present agreement, importing an intention of the parties to be then and there bound.

The provisions for the reduced payments created a present interest in the Still Corporation, the grantor under the deed of trust, although the enjoyment thereof was postponed until the death of Dr. Short. The provisions represented the present fixing of the terms of the deed of trust—terms by which the parties, in their established debtor-creditor relationship, were thereafter to be governed and by which their rights and liabilities were to be determined.

It makes no difference, contrary to the contention of Mrs. Short, that the Still Corporation did not request the provisions for reduced payments as part of its bargain or that it might have agreed to the terms of the deed of trust without such provisions being included.

The overriding fact is that the provisions were included at the direction of Dr. Short, for reasons considered sufficient by him, and when so included were acquiesced in by the parties as an integral part of, and as ancillary to, the deed of trust constituting their final agreement.

Moreover, there is another ground upon which the finding of the chancellor in this respect can be upheld.

It will be recalled that in the disputed paragraph of the deed of trust there is included, between the provisions for reduced payments and the statement concerning the testamentary intent of Dr. Short, a clause providing for the distribution of "the balance due under the Deed of Trust" after Dr. Short's death.

It is reasonable, without straining the rules of construction, to say that the statement concerning Dr. Short's testamentary intent related, not to the provisions for reduced payments, but only to the clause providing for distribution of the proceeds of the deed of trust. When that construction is adopted, any doubt of the contractual nature of the provisions for reduced payments, if doubt there be, is finally removed.

Mrs. Short next contends that the chancellor erred in ruling that she had waived any default which may have occurred in payments due under the promissory note and that she was not entitled to accelerate the payment of the remaining balance of the debt. The question here presented deals with a provision of the promissory note that if any installment was not paid on time, the entire amount unpaid would, at the election of the holder, become due and payable. Mrs. Short contends that the Still Corporation defaulted in making the September, 1961, and the May, 1963, payments.

It is undisputed that the September, 1961, payment of $1000 was not made by the Still Corporation when due. It was not made until October, 1962, after the present litigation was commenced and after it was first called to the attention of the corporation that the payment had not been made.

In the meantime, Mrs. Short had not uttered one word or taken any action in regard to the default. She accepted the ensuing monthly payments without question as to the earlier defalcation. And, most significant of all, when she filed her bill of complaint, no mention was made therein concerning the September, 1961, default. It was not until after the Still Corporation had made the payment and she had accepted it that she, on October 30, 1962, amended her bill of complaint to set up the default. Even then, she waited until January 24,

1964, before she directed the trustee to proceed with foreclosure of the deed of trust for the alleged default.

Concerning the May, 1963, installment, it will be recalled that Mr. Still deposited the payment therefor in the mail on May 10 and that it was delivered to Mrs. Short the next day, although overlooked and misplaced by her until July.

It was uncontradicted that the Still Corporation had always made its monthly payments under the deed of trust by posting them in the mail for delivery to Mrs. Short, without any objection from her as to this practice. She apparently considered the payments to have been made on time when posted on the tenth of the month and received the following day, because when she amended her bill of complaint with respect to the September, 1961, payment, she alleged that the installment "was due . . . September *11*, 1961." [Emphasis added.]

Be that as it may, Mrs. Short waited three weeks before she took any action with respect to the alleged default in the May payment. When she did take action, it was not on the ground that the payment had been made one day late but on the basis that it had not been made at all when, in fact, it had been made but had been misplaced by her. She accepted the new check issued by Still to replace the one supposedly lost. And she waited another three months before she amended her bill of complaint to assert this alleged default.

But the most significant fact, with regard to the May installment, is that when Mrs. Short directed the trustee, in writing, to foreclose the deed of trust in January, 1964, she made no mention of the alleged default in the May payment.

Under these circumstances, the chancellor was fully justified in finding that Mrs. Short had waived the alleged default with respect to both installments in question and that she was not entitled to rely upon either incident to accelerate the payment of the remaining balance of the debt. The evidence sustained the chancellor's ruling that the threatened foreclosure sale, for the alleged default, was improper and should be permanently enjoined. *Fant* v. *Thomas*, 131 Va. 38, 45-46, 108 S. E. 847.

We find no error in the rulings of the chancellor. Accordingly, the decrees appealed from will be

*Affirmed.*