# WALLACE M. BAILEY

v.

# GEORGE F. KERNS, ADMINISTRATOR OF THE ESTATE OF EDITH M. KERNS, DECEASED, ET AL.

Record No. 921431

June 11, 1993

Present: All the Justices

*Leo J. Scolforo* for appellant.

*Gary A. Howard* for appellee George F. Kerns, Administrator of the Estate of Edith M. Kerns, Deceased.

No brief or argument for appellees Steven Bean, Executor; David E. Penny; Jamie Penny; David Thomas Kerns; and Diana Michelle (Shelley) Kerns Guidara.

JUSTICE KEENAN delivered the opinion of the Court.

The primary issues in this will contest case are (1) whether the trial court erred in ruling that the face of a holographic writing made by Edith M. Kerns contained evidence of testamentary intent, and (2) whether the trial court erred in admitting extrinsic evidence offered to establish the testamentary nature of the instrument.

Edith M. Kerns, also known as Edith B. Kerns (Edith), died on July 6, 1988. When no will was found at the time of her death, her son, George F. Kerns, qualified as administrator of her estate. Less than seven months later, Edith's sister, Gertrude Bean, passed away. Among Bean's possessions was a hardware store receipt dated November 25, 1985. On the back of the receipt was an undated writing made in Edith's handwriting.

On March 3, 1989, the Clerk of the Circuit Court of Prince William County admitted this instrument to probate as Edith's will and qualified George Kerns as administrator of the estate. Wallace M. Bailey, also a son of Edith, appealed the order admitting the instrument to probate.

The writing, which was made entirely in the handwriting of Edith and was addressed to her son, George, states:

George Kerns
> When this property is sold I want this
> > Tommy Kerns $10,000
> > Shelly Guidara $10,000
> > David Penny $5,000
> > Jamie Penny $5,000
> The rest goes to you and your family.
> Of course all my Bills are to be paid.
>
> Love you even if I haven't been much of a Mom - Edith
> B. Kerns

Bailey filed a motion for summary judgment on the ground that the document lacked any evidence of testamentary intent. The trial court denied the motion and the case proceeded to trial on the sole issue whether the instrument was testamentary in nature.

At trial, David Penny testified that he had lived with Edith for several years and that he thought of her as his mother. Penny, his wife, and their two children, David and Jamie, who are named in the instrument, visited Edith once a week until the time of her death. Penny also testified that, at the time of her death, Edith still had several foster children living with her and that she was constantly fixing up her house and had expressed no desire to sell it.

Edith's sister, Charlotte Compton, testified by deposition that Edith had lived in the same house for over twenty years and that she seemed happy there. Compton also testified that Edith was very fond of David Penny, one of her foster children, and that she would not be surprised if Edith had made a gift to Penny's sons in her will.

George Kerns testified that his mother owned a 60% interest in the property in question, which consisted of four acres of land, the house in which she lived, and a house trailer. Kerns further testified that his mother had no other significant assets and that, approximately 15 years prior to her death, she told him that she had made a will.

David T. Kerns, Jr., Edith's grandson, testified on behalf of the opponents of the will, stating that he had lived in Edith's house since 1979 and that he was still living there at the time of her death. David Kerns testified that Edith kept her personal papers either in a box on top of the refrigerator or in a small basket by her bed. He further testified that he had seen Edith place sealed envelopes in a safety deposit box at the bank. He also testified that Edith had indicated that she would like to live by the water.

George Kerns was called as a rebuttal witness. He testified that his mother never mentioned any desire to live by the water. He also testified that the only time she mentioned selling the property was when she refused an unsolicited offer on the house.

Bailey made a motion to strike at the conclusion of the proponents' evidence and, again, at the conclusion of all the evidence. The trial court denied both motions. Bailey then objected to certain jury instructions that the trial court granted, in addition to the court's denial of seven instructions that he proposed. The jury found that the holographic writing was the will of Edith B. Kerns. This appeal followed.

Bailey first argues that the trial court erred in allowing the jury to decide whether the instrument was a will because there is no evidence of testamentary intent contained within the four corners of the instrument. We disagree.

The word "testamentary" means "applicable or related to death; having to do with dispositions or arrangements effective upon the happening of that event." *Poindexter v. Jones*, 200 Va. 372, 376, 106 S.E.2d 144, 146 (1958). Some evidence of testamentary intent must be found on the face of a writing before it can be held to be a valid will. *Mumaw v. Mumaw*, 214 Va. 573, 577, 203 S.E.2d 136, 139 (1974); *Quesenberry v. Funk*, 203 Va. 619, 624, 125 S.E.2d 869, 874 (1962); *Poindexter v. Jones*, 200 Va. at 379, 106 S.E.2d at 148.

The determination whether the face of an instrument contains evidence of testamentary intent is a matter of law to be decided by the trial court. *See Quesenberry*, 203 Va. at 624, 125 S.E.2d at 874. If the trial court determines that there is no evidence of testamentary intent within the four corners of the instrument, as a matter of law, that instrument is not a valid will. *Poindexter*, 200 Va. at 376, 106 S.E.2d at 146.

When, as here, the decedent has not included in the instrument an express statement of her testamentary intention, the determination whether such intent appears on the face of the instrument is made by examining all its parts. *See Moon v. Norvell*, 184 Va. 842, 849-50, 36 S.E.2d 632, 635 (1946). Therefore, we shall consider the instrument before us as a whole in determining whether the trial court erred in ruling that it contained evidence of testamentary intent on its face.

We first observe that the instrument contains several elements commonly associated with wills. Edith allocated specific amounts of money to named individuals and then disposed of the balance of

the money from the sale of the property to George Kerns and his family, with the requirement that "Of course all my Bills are to be paid." Lastly, Edith gave a closing statement of affection and signed her name.

■ The instrument was addressed to Edith's son, instructing him what she wanted done "[w]hen this property is sold." This language is evidence that Edith did not intend to be the seller of the property and that she did not expect to be able to express her wishes at the time of the sale. Edith's direction that all her bills be paid is also evidence of testamentary intent because one does not ordinarily direct the payment of every existing debt out of a sale to take place during one's lifetime. In addition, Edith signed her full name at the end of the instrument, which was addressed to her son. This full signature is evidence suggesting that she intended the document to be more formal than a letter to her son.

■ We hold that these elements, appearing together, constitute evidence of testamentary intent on the face of the instrument. Our conclusion here is supported by *Grimes v. Crouch*, 175 Va. 126, 7 S.E.2d 115 (1940), in which this Court found evidence of testamentary intent on the face of a holographic writing that contained less language probative of testamentary intent. The writing in *Grimes* provided: "Ever thing left to sister for life times." "C.A. Grimes." *Id.* at 129, 7 S.E.2d at 116. This Court held that the word "left" was evidence of testamentary intent on the face of the instrument and, therefore, that the trial court had not erred in allowing the presentation of extrinsic evidence of testamentary intent and in submitting the case for the jury's consideration. *Id.* at 132-34, 7 S.E.2d at 117-18.

■ We next consider whether the trial court erred in admitting certain extrinsic evidence offered to establish the testamentary nature of the instrument. Bailey argues that, while extrinsic evidence may be admitted to aid in the interpretation of ambiguous terms of a will, it is inadmissible to establish that a writing is a will. In response, Kerns asserts that, if there is some evidence of testamentary intent on the face of the instrument, extrinsic evidence may be admitted either to establish or to refute the testamentary nature of the instrument. We agree with Kerns.

■ This Court has stated that

[i]t is a settled rule in this country and in England that in determining whether the instrument propounded was intended

to be testamentary, reference will be had to the surrounding circumstances, and the language will be construed in the light of those circumstances; and that if it shall appear under all the circumstances that the instrument was intended to be testamentary, the court will give effect to the intention, if it can be done consistently with the language of the instrument. But while the courts have gone far in construing almost any form of instrument to be a will, we have been unable to find a case in which a paper with nothing on its face to indicate that it was intended to be testamentary was held to be entitled to probate as a holograph will.

*Smith v. Smith*, 112 Va. 205, 208, 70 S.E. 491, 492 (1911). Thus, in *Smith*, this Court applied the rule that when there is no evidence of testamentary intent on the face of an instrument, it cannot be admitted to probate as a will. *Id.* However, when the face of the instrument contains some evidence of testamentary intent, extrinsic evidence may be admitted to determine whether the instrument is testamentary in nature. *Grimes*, 175 Va. at 132-34, 7 S.E.2d at 117-18.

Nevertheless, Bailey cites *Poindexter*, 200 Va. at 376, 106 S.E.2d at 147, in support of his argument that extrinsic evidence is not admissible to establish testamentary intent. However, this Court's ruling in *Poindexter* was based on a holographic writing that, on its face, contained no indicia of testamentary intent. *Id.* at 375, 106 S.E.2d at 146. Therefore, this Court held that extrinsic evidence was not admissible to prove testamentary intent. This Court further noted that, if some evidence of testamentary intent had appeared on the face of the instrument, evidence to establish or to refute the existence of testamentary intent may have been admissible. *Id.* at 375-76, 106 S.E.2d at 146. Thus, *Poindexter* does not prohibit extrinsic evidence of testamentary intent in all cases, but only in those cases in which the face of the instrument does not contain any evidence of testamentary intent. *Id.* at 377, 106 S.E.2d at 147.

We also find that Bailey's reliance on *Mumaw v. Mumaw*, 214 Va. 573, 203 S.E.2d 136 (1974), is misplaced. In *Mumaw*, the plaintiffs sought to establish that a letter was a valid will. Like the instrument in *Poindexter*, the letter at issue in *Mumaw* did not contain evidence of testamentary intent on its face. Thus, as in *Poindexter*, this Court applied the rule that testamentary intent cannot be proved by extrinsic evidence when the face of the instrument lacks any indication of such purpose. *Id.* at 577, 203 S.E.2d at 139.

Finally, we disagree with Bailey's assertion that *Baliles v. Miller*, 231 Va. 48, 340 S.E.2d 805 (1986), and *Fenton v. Davis*, 187 Va. 463, 47 S.E.2d 372 (1948), are applicable to our inquiry here. In *Baliles*, this Court's holding on the admissibility of extrinsic evidence applied to the interpretation of an ambiguous provision in a will, not whether the will itself was valid. *Id.* at 57, 340 S.E.2d at 810. In *Fenton*, this Court was required to determine whether a portion of a holographic document appearing as a postscript after the decedent's signature was a valid testamentary disposition. This issue involved the finality of testamentary intent, that is, whether the words following the signature were a complete, concluded act. *Fenton*, 187 Va. at 469, 47 S.E.2d at 375. Thus, in *Fenton*, this Court did not hold that extrinsic evidence can never be used to show testamentary intent, but only that extrinsic evidence cannot be used to show a decedent's intent to authenticate an unsigned portion of a document.

In the present case, Bailey specifically objects to four of the trial court's rulings admitting extrinsic evidence. The first ruling allowed Charlotte Compton's testimony that she would not be surprised if Edith had left something to David Penny's children. A review of the record reveals that this statement was made within the context of Compton's description of the close relationship between Edith and David Penny. Such evidence, relating to Edith's family circumstances and her relationship with persons named in the instrument, was admissible on the issue of testamentary intent. *See Poindexter*, 200 Va. at 375-76, 106 S.E.2d at 146; *Smith*, 112 Va. at 208, 70 S.E. at 492.

Bailey next objects to the admission of Compton's testimony that Edith seemed happy in her home. He argues that such evidence was irrelevant. We disagree. This evidence was probative as to whether Edith had any intent to sell her home in her lifetime. Therefore, we conclude that this evidence was properly admitted. *See Poindexter*, 200 Va. at 375-76, 106 S.E.2d at 146; *Smith*, 112 Va. at 208, 70 S.E. at 492.

Bailey also argues that the trial court erred in ruling that evidence regarding "certain circumstances surrounding this document, the entry of this document, the location and finding of this document, and the meaning and intent of the document should be admissible." However, Bailey does not identify any particular evidence that he asserts was admitted improperly under this ruling. Therefore, we give no further consideration to this argument.

■ Lastly, Bailey asserts the trial court erred in admitting George Kerns's testimony that, 15 years before her death, his mother told him she had made a will. Because the parties agree that the holographic instrument at issue was written sometime between November 25, 1985, the date of the receipt, and July 6, 1988, the date of Edith's death, the above testimony was irrelevant. However, since our review of the record does not disclose a reasonable likelihood that the jury's verdict would have been different had the trial court excluded this evidence, we find that its admission was harmless, if error at all. *See Adams v. Adams*, 233 Va. 422, 429, 357 S.E.2d 491, 495 (1987).

■ Bailey next contends that the trial court erred in granting three of the proponents' jury instructions and in denying seven instructions that he proposed. Bailey first objects to the granting of the following instruction: "Definition of Will. A Will is any writing that is legally executed in which a person states how her property is to be disposed of after she dies." Bailey argues that this instruction was an incomplete statement of the law under the facts of this case because it did not discuss the requirement of testamentary intent. We hold that the trial court did not err in giving this instruction because the instruction properly stated that a will is a disposition "applicable or related to death." *Poindexter*, 200 Va. at 376, 106 S.E.2d at 146. Moreover, the trial court gave another instruction that adequately addressed the requirement of testamentary intent.

Citing *Short v. A.H. Still Inv. Corp.*, 206 Va. 959, 964, 147 S.E.2d 99, 103 (1966), and *Spinks v. Rice*, 187 Va. 730, 740-41, 47 S.E.2d 424, 428-29 (1948), Bailey next argues that the instruction on testamentary intent was incomplete because it failed to instruct the jury concerning "the time at which the interest was conveyed." However, we find that the trial court correctly overruled Bailey's objection because *Short* and *Spinks* both address the issue of distinguishing a will from a contract and, thus, they are inapposite to the present case.

■ Bailey also asserts that the trial court erred in instructing the jury on circumstantial evidence. Based on our holding above that certain circumstantial evidence was properly admitted, we conclude that the trial court did not err in granting this instruction.

■ We have examined each of Bailey's instructions that the trial court denied. Instructions D, E, F, and H attempted to instruct the jury based on the *Short* and *Spinks* cases. As stated above, these cases dealt with the determination whether a document was a contract or a will. *See Short*, 206 Va. at 963-64, 147 S.E.2d at 103;

*Spinks*, 187 Va. at 740-41, 47 S.E.2d at 428-29. Since there was no such issue in the present case, these instructions were properly denied.

 Instruction I, which the trial court also denied, stated that the words "Love you even if I haven't been much of a Mom" are not indicative of testamentary intent. Bailey argues that the trial court erred in denying this instruction because this Court previously has stated that the word "beloved" was not evidence of testamentary intent. *See Poindexter*, 200 Va. at 378, 106 S.E.2d at 147. We disagree. *Poindexter*, in which the Court considered a one-sentence instrument, does not reject the probative value of all statements of affection. When considered in context, statements of affection may be relevant to the issue of testamentary intent. Here, the statement of affection came at the conclusion of a document that contained specific and residual dispositions of property, as well as a provision for the payment of all debts. In this context, we hold that Edith's statement of affection was probative of testamentary intent and that, therefore, the trial court did not err in denying Instruction I.

 Instruction G, as modified, attempted to tell the jury that, if the document was unambiguous, the jury should not consider evidence other than the document itself. The trial court denied this instruction based on its ruling allowing extrinsic evidence in the case. Since we have affirmed this ruling on extrinsic evidence, we hold that the trial court properly denied Instruction G. Lastly, Instruction J proposed to tell the jury that they could not speculate as to what Edith intended by the writing. The trial court ruled that this subject was covered adequately in the general instructions. We agree.

For these reasons, we will affirm the trial court's judgment.

*Affirmed.*