## CIRCUIT COURT OF BEDFORD COUNTY

Russell C. Turpin, in his own right
and as executor of the will of
Loyd W. Turpin

v.

Ruby Neas Turpin et al.

November 2, 1979

By JUDGE WILLIAM W. SWEENEY

Russell Barry Turpin and Joyce Turpin Texter, grand-children of Loyd W. Turpin, deceased, filed exceptions to certain findings of the Commissioner in Chancery. Loyd Turpin died on July 21, 1976, leaving a will dated November 4, 1968.

Argument on the exceptions has been heard. At issue is the ownership of two notes and a savings account. Specifically, the exceptions raise ownership questions as to the "Artrip note," the "Parker note," and a savings account at a Bedford bank. The Commissioner ruled that the balance on the two notes and the balance in the savings account belonged to Loyd W. Turpin's estate and should be distributed as such. The grandchildren claim vested interests in the notes and savings account.

By well-established principles of law, the report of a Commissioner in Chancery carries a presumption as to the correctness of findings of fact based on credible

evidence. Therefore, the factual evidence will be viewed in a light favorable to the prevailing party.

There is no claim by any of the parties that the deed of trust notes and savings account or statements thereon were testamentary instruments. Also, we are not concerned with resulting trusts.

*The Savings Account*

Ownership of the savings account will be treated first because it is the clearest issue. The Commissioner made correct findings of fact and law on this issue. I confirm his ruling.

At the time of Loyd Turpin's death, it was discovered that he had a savings account in a local Bedford bank in his name and that of Russell Barry Turpin, his grandson, "as joint tenants with full rights of survivorship as at common law." Barry Turpin contributed nothing. Originally, the account was opened by Loyd Turpin in his name alone. In 1973, at a time when his health was beginning to fade and his eyesight bad, Loyd Turpin added joint survivorship language in favor of his grandson.

The passbook was never delivered to Barry Turpin and he made no deposits or withdrawals except just prior to Loyd Turpin's death when he was unconscious and in the hospital. In 1974, Barry Turpin tried to borrow $11,000 from a bank to purchase his father's life interest in a farm. When the bank refused the loan, he attempted to borrow the money from his grandfather, Loyd Turpin. This was one year after the survivorship language had been added to the savings account. Loyd Turpin did not loan his grandson the money but did give him $11,000. Apparently, the gift of money was withdrawn from this same savings account. In fact, there is evidence that Loyd Turpin made outright gifts of money to both his grandchildren during his life.

From a review of the record, it seems clear that Loyd Turpin never intended for his grandson to own any interest in this savings account, at least until Loyd died. No irrevocable, present gift was made in 1973. The preponderating evidence is that the survivorship account was created in both names for purpose of convenience and to meet the financial requirements of a last illness.

Loyd Turpin was, in fact, in failing health when the survivorship language was added. There is a presumption against a completed gift in joint savings account cases. *Haynes* v. *Hurt*, 209 Va. 447, 164 S.E.2d 671 (1968).

Where the deposit by a person is in the name of himself and another, not his wife, the presumption is that it was done for the purposes of convenience only and this presumption is strengthened by the illness or infirmity of the depositor. *Quesenberry* v. *Funk*, 203 Va. 619 at 622; 38 C.J.S., *Gifts* § 50.

The donee has the burden of proving a valid gift in bank account cases. The presumption against a completed gift has not been overcome by the evidence.

### The Notes

Different rules apply to survivorship gifts in joint savings account cases and in notes, stocks, and bonds. *Haynes* v. *Hurt*, 209 Va. 447, 164 S.E.2d 671 (1968); *Wrenn* v. *Daniels*, 200 Va. 419, 106 S.E.2d 126 (1958). The Commissioner's report did not draw this distinction very clearly. In note assignments such as here, the executor has the burden of proof that the testator did not intend to create an irrevocable vested survivorship interest. Proof to the contrary must come from sources independent of the instruments.

The Parker note was a deed of trust note dated October 24, 1968, made by George R. Parker to Loyd W. Turpin. This note had an unpaid balance of $49,433.39 at Loyd Turpin's death. On March 1, 1970, the following endorsement or assignment was made on the reverse side of the note.

I, Loyd W. Turpin, do hereby endorse, assign, transfer and give this note and all the proceeds from payment of same to myself and my granddaughter, Joyce C. Turpin, this 1st day of March, 1970, as joint tenants with full rights of survivorship as at common law. /s/ Loyd W. Turpin

The Artrip note was a deed of trust note on which there was a balance of $13,629.66 at Loyd Turpin's death. On March 1, 1970, the same day as the assignment on the Parker note, Loyd Turpin made an absolute assignment of this note to Emma R. Turpin. He later scratched out this assignment and made the following new assignment on the back of the note on March 21, 1973:

> I, Loyd W. Turpin, do hereby endorse, assign, transfer and give this note dated June 1, 1969, unto my grandson Russell Barry Turpin and myself, Loyd W. Turpin, as joint tenants with full rights of survivorship as at common law and not as tenants in common, this 21st day of March, 1973. /s/ Loyd W. Turpin.

The signature to the endorsement is that of Loyd W. Turpin. The writing above the signature is that of his attorney, Lacey E. Putney.

Barry Turpin was not present when the assignment was made but he had seen the note and his grandfather had discussed it with him. There was never any delivery of the note, actual or constructive. Payments on the note were $100 per month.

Joyce, the granddaughter, testified that during Christmas, 1974, her grandfather said he wanted to "sign everything over to her brother and her jointly with the understanding that the payments of both notes and other sources of income that he had, other than social security kind of things be directed to me each month with the understanding that I submit back to him a certain amount for living expenses." Mainly because she thought it right and proper that he should retain what he had, she refused his offer.

The monthly payments on both notes were not segregated but were automatically deposited in Loyd Turpin's general checking account at his Bedford bank. (T-39) The funds were spent in a general way. There has been no claim in this case that resulting trusts were created or intended.

In 1974, Mr. Putney sent his client, Loyd Turpin, to a tax lawyer in Lynchburg. At one point, Turpin had talked with Putney about making outright gifts of the

notes to his grandchildren but decided against this because he might need the money himself. (T-80)

Lacey Putney was asked if he recalled advising his client that he could not make a gift of the notes and retain them at the same time because those two positions were inconsistent. Putney's answer was "I recall using the illustration with him of something like you can't have your cake and eat it too." (T-88)

In his discovery depositions filed in this cause, Barry Turpin was asked if he considered himself the owner of the note and he replied "not until his death, no sir." (T-65)

I was impressed with the straight-forward nature of the testimony of the two grandchildren. I find no problems with their testimony.

Delivery, one of the essential requirements of a valid inter vivos gift, was totally lacking as to the notes. Further, there is a serious question of acceptance by the donees and intention of the donor.

Counsel for the grandchildren argue that no delivery is necessary in joint tenancy assignments or that possession of one joint tenant is possession of all. He relies on *Haynes* v. *Hurt*, *supra*, *Wrenn* v. *Daniels*, *supra*, *Robinson* v. *Lee*, 205 Va. 363, 136 S.E.2d 860 (1964), and several cases from out of state. It is true that these cases do make a distinction between bank account survivorship cases and others. However, they do not clearly address the delivery issue. In most of them, no mention of the delivery requirement is made. One cannot tell whether it was an issue on appeal. In any event, I have found no Virginia case clearly holding that some form of delivery is not required in joint tenancy assignments. Further all these cases expressly or impliedly recognize that even with a joint tenancy gift, there must be a present intent to create an irrevocable interest in the other tenant at the time of the transfer. For example, in *Haynes* the Court said "[t]he instrument of assignment in this case, unlike a joint bank account, *irrevocably* transferred an interest in the mortgage note to Mrs. Haynes. That interest, by the express terms of the instrument was *the right to receive one half of the installments maturing while Hurt and she were living*, and to receive all of the installments maturing

after Hurt's death. . ." 209 Va. 447 at 449. (Emphasis added)

For the creation of a joint tenancy, it is required that the title of the joint owners be created by the same act, that the interests vest at the same time, that the interests be of the same quantity and duration, and that the property be held in undivided possession. *Cases and Materials on Decedent's Estates*, Ritchie, Alford, Effland, p. 691.

Did Loyd Turpin intend to transfer an irrevocable interest in the notes to the grandchildren when the assignments were made? The clear and convincing weight of the evidence is that he did not. First, he put the monthly payments on the notes in his general checking account and used it for his own purposes. Second, on one note, he made an absolute assignment to someone else and changed his mind later. Third, there is evidence from the record as a whole that Mr. Turpin was not in good health and was afraid to sever all ties with the notes because he might need some of the money before he died. Fourth, the inescapable conclusion is that he did not want to have the notes pass through his estate for tax reasons but he was afraid to release them entirely. A person cannot give something away and keep it too. This is true in attempted joint tenancy assignments as well as other forms of gift. Expressed otherwise, you cannot "have your cake and eat it too."

It is true that this ruling will frustrate the intent of the donor, but a different ruling would frustrate the intent of the law. By analogy, invalid wills likewise frustrate intent, but that is no argument for upholding them.

### Conclusion

My reasoning is not the same as that of the Commissioner, but we agree on the facts and the findings. As to the notes, the executor has carried his required burden of proof by sufficient evidence outside the instruments themselves. The rulings of the Commissioner as to the two notes and the savings account are affirmed. The estate will bear all costs herein.