DIANE GORICZYNSKI, ET AL.

V.

ANITA O. POSTON, ADMINISTRATOR, ETC., ET AL.

Record No. 931561

September 16, 1994

Present: All the Justices

*Jeffrey T. Talbert (Shuttleworth, Ruloff, Giordano & Kahle*, on brief), for appellants.

*W. Scott Street, III (A. Peter Brodell; Williams, Mullen, Christian & Dobbins*, on brief), for appellees American Cancer Society, Virginia Division, Inc., and American Heart Association, Virginia Affiliate, Inc.

*Mary C. Hamilton (Vandeventer, Black, Meredith & Martin*, on brief), for appellees Anita O. Poston, Administrator d.b.n.c.t.a. of the Estate of Charles R. McCowen.

*(Michael A. Glasser; Glasser and Glasser*, on brief for appellees Henry Driver and Virginia Driver).

JUSTICE COMPTON delivered the opinion of the Court.

In this appeal from a decree furnishing aid and direction to a decedent's personal representative, the principal question deals with the effect of handwritten pen-and-ink changes made to a typewritten attested will subsequent to its execution.

Charles Roach McCowen, the testator and a resident of Norfolk, died September 4, 1989. The testator's will, dated October 27, 1983, was probated by the clerk of the court below on September 6, 1989. John W. Newton, nominated in the will, qualified as executor of the estate giving bond in the sum of $1 million.

In September 1990, the executor filed the present suit seeking aid and direction in ascertaining the estate's distributees. The executor, a beneficiary under the will, joined as defendants the 15 other beneficiaries originally named in the will. Also joined as

defendants were the testator's seven heirs at law, none of whom were beneficiaries under the will.

In October 1991, the chancellor removed the executor and substituted appellee Anita O. Poston as administrator d.b.n.c.t.a. of the estate. Following hearings in January and May 1993, and upon consideration of a stipulation of facts, the chancellor sustained the validity of the will, rejecting the heirs' contention that the decedent died intestate. We awarded the appellants, Diane Goriczynski and the testator's other heirs, this appeal from the July 1993 final decree.

Labelled "Last Will And Testament Of Charles Roach Mc-Cowen," the typewritten document contains two pages of substantive provisions and is attested by two witnesses. Following a preamble, the writing contains four Articles. Article I directs payment of debts, funeral expenses, and taxes. Article II appoints an executor and a substitute.

Article III contains paragraphs A, B, C, D, E, F, G, H, I, J, K, and L. Paragraph A gives the testator's Norfolk business, "Mac's Cycle Shop," to Newton. Paragraphs B through K contain a devise of the testator's Norfolk residence, the gift of an airplane, and gifts of specific sums of money to named individuals. Paragraph L is the residuary clause naming "the Salvation Army, Heart Fund, and American Cancer Society" as residuary beneficiaries. Article IV grants to the personal representative the powers specified in the applicable statute.

The following additional facts are not disputed on appeal: The will was drawn by an attorney; no handwritten marks, except signatures and dates, were on the will at the time of its execution; the testator had testamentary capacity when the will was executed; the testator had continuous possession of the document from its execution until his death; and, the will was found at the testator's residence "at or near the time of his death."

As found, the will contains certain handwritten markings. There is no dispute on appeal that the handwriting and marks on the will were made by the testator and that he had testamentary capacity on the date or dates these changes were made.

We shall now describe the markings made on the original document that give rise to this controversy. Subsequent to the execution of the will, the testator drew with a pen some red lines and some black lines through a number of the provisions. The lines mostly are wavy and run horizontally over the typewritten words.

The words in paragraphs A, B, C, D, G, and I of Article III are marked through virtually in their entirety. The testator also drew a horizontal line through the words "Salvation Army" in paragraph L, the residuary clause.

In addition, along the left margin of the first and second pages of the document, the testator wrote the word "Delete" in seven places adjacent to paragraphs A, B, C, D, G, I, and L of Article III. Also, where the words "Delete" were written in the margin, the testator signed his name and placed the date "1-20-89" at each signature. The writings in the left margin do not touch any typewritten portions of the document.

In paragraphs J and K of Article III, the testator had given to Henry Driver and Virginia Driver the sum of "Twenty Thousand ($20,000.00) Dollars" and to Gary (Red) Chandler the sum of "Five Thousand ($5,000.00) Dollars," respectively. After execution of the will, the testator drew mostly straight, horizontal lines through the words and figures representing the dollar amounts in each paragraph. In the Driver paragraph, he inserted "10,000" and in the Chandler paragraph he inserted "$10,000." Both insertions were made at the end of each paragraph on the blank parts of the page.

Rejecting the heirs' contention for total revocation, the chancellor ruled the testator had accomplished a partial revocation of the will. The chancellor decided that the deletions without substitutions in paragraphs A, B, C, D, G, I, and L of Article III caused those devises and bequests to fail. The chancellor also ruled that the gifts of cash in the unchanged paragraphs, that is, paragraphs E, F, and H, are valid bequests, and that the residuary legatees under paragraph L are the Heart Fund and the American Cancer Society by virtue of the deletion without substitution of the Salvation Army.

The chancellor also ruled that the deletions with substitutions of the numerical amounts in the Driver and Chandler paragraphs are ineffective, and that those provisions, under the doctrine of dependent relative revocation, will be read as if no changes were attempted. According to the doctrine, if a testator performs any act to vitiate a will with the present intention of making a new will immediately, and the new one is not made, or if made fails for any reason, then the old will, having been conditionally revoked, still stands. *Bell* v. *Timmins*, 190 Va. 648, 659, 58 S.E.2d 55, 61 (1950). The basis for the rule is that if a testa-

tor's whole testamentary intent cannot be carried out in making the new will, or in making changes to the old one, then the law presumes that the testator prefers the old will to intestacy and that the revocation was conditioned upon the new testamentary disposition being effective. *Id.* at 659-60, 58 S.E.2d at 61.

On appeal, the heirs' first contention is the trial court erred in ruling that the testator's markings on the will constituted only a partial rather than a total revocation of the will, and erred in ruling that the will, as partially revoked, was properly admitted to probate. We disagree.

The principal issue is whether the testator effected a partial revocation of his will by the physical acts of drawing lines through the typed words of the will. That query must be answered in the affirmative.

■ Code § 64.1-58.1, dealing with revocation of wills generally, provides, as pertinent: "If a testator having an intent to revoke . . . cuts, tears, burns, obliterates, cancels or destroys a will or codicil . . . , or some provision thereof, such will, codicil or provision thereof is thereby void and of no effect." Plainly, because the statute refers to acts directed to a "provision" of the testamentary document, it permits partial revocation of a duly attested will without further formalities. *See Etgen* v. *Corboy*, 230 Va. 413, 416-18, 337 S.E.2d 286, 288-89 (1985). And, whenever any of the foregoing statutory methods are employed by the testator with an intent to revoke, the changes are effective, even though made after execution of a duly attested will, provided "they sufficiently support an inference of cancellation." *Triplett's Ex'r* v. *Triplett*, 161 Va. 906, 917, 172 S.E. 162, 166 (1934).

■ In the present case, the physical act of drawing lines through the typed provisions of Article III unambiguously supports an inference of cancellation. Furthermore, there is the unrebutted presumption that the testator made these changes with the intent to revoke. When, as here, the will presented for probate had been in the testator's custody after execution and was found among his effects at death with provisions marked through that constitute a sufficient act of cancellation within the meaning of the applicable statute, a rebuttable presumption arises that such marks were made with the intention of revoking the affected provisions. *See Franklin* v. *McLean*, 192 Va. 684, 689, 66 S.E.2d 504, 506 (1951); *see generally* Brockenbrough Lamb, *Virginia Probate Practice* 77-80 (1957) (employing examples identical to

facts of this case). In addition, even though the marginal notes are of no legal effect, they do support the conclusion drawn from an examination of the document left by the testator that he meant a partial, not complete, revocation of the will.

█ Also, despite the cancellations made in Article III, the will that remains is complete and has "the finality of testamentary intent." *Jessup* v. *Jessup*, 221 Va. 61, 73, 267 S.E.2d 115, 122 (1980). The will, still carrying the label of "Last Will And Testament," provides for payment of debts, expenses, and taxes; names a personal representative with specified powers; provides for specific gifts to named individuals; and leaves the residue of the estate to named charitable organizations. Indeed, the will carries out the testator's manifest intention, that is, he did not want his estate to pass to his heirs.

The heirs' second contention is that the chancellor erred in applying the doctrine of dependent relative revocation to the Driver and Chandler bequests. We do not reach the merits of that assignment of error because the heirs lack standing to raise the issue.

█ The heirs will inherit the testator's estate only if the will is declared entirely revoked and of no effect. The doctrine of dependent relative revocation was applied to only two specific bequests in which the testator retained the named legatees, but attempted to change the amount given to each. The chancellor's ruling impacts only the size of the residuary estate *under the will*. The heirs receive nothing under the will and thus have no cognizable interest in this issue.

Consequently, the decree of the trial court will be

*Affirmed.*