# CIRCUIT COURT OF THE CITY OF ROANOKE

In re Estate of
Ruth Brammer Doughtie,
deceased

March 27, 2006

Case No. CH05-864

By Judge Clifford R. Weckstein

The executor of the estate of Ruth Brammer Doughtie seeks judicial aid and direction about (1) how to interpret Ms. Doughtie's will and administer her estate when the name of one of three residuary beneficiaries has been obliterated with correction fluid; and (2) what legal effect, if any, to give to Ms. Doughtie's firmly-expressed oral statements about how she wanted her estate to be distributed after her death.

All necessary persons are before the court. They have had notice and the opportunity to be heard. I heard evidence *ore tenus* on January 5, 2006. My findings of fact and conclusions of law are set forth in the body of this opinion; the relevant principles of law are those that I discussed from the bench on January 5.

Sallie Ruth Brammer Doughtie (known as Ruth) was a resident of the City of Roanoke, who died on October 23, 2005, of injuries suffered in an October 10 car accident. She was an indomitable lady of ninety-one, who, until the accident, was mentally acute and clearly possessed of the ability to make, alter, or revoke testamentary dispositions.

Ms. Doughtie died testate; that is, she had a will. Carlton B. Goode, a nephew who was nominated in the will, qualified before the clerk of this court as executor of Ms. Doughtie's estate. The will named Wilford Jack Brammer

as executor and named Carlton B. Goode to serve as executor if Wilford Brammer could not. As discussed below, Ms. Doughtie outlived Wilford Brammer. The will gives the executor the broad general powers that are set forth in Virginia Code § 64.1-57.

It is clear from the evidence that, but for the accident, Ms. Doughtie would have revised her will. She had told at least three trusted persons what changes she planned to make. And, she had made an appointment to discuss her will with her lawyer, Shirley Jamison.

A number of Ms. Doughtie's relatives, some of whom traveled for hours to be present, attended the January 5 hearing. Six witnesses testified. After determining that no one else present wanted to testify, I invited all interested persons to address letters to the court. I have received, and very much appreciate, a number of thoughtful letters about the disposition of Ms. Doughtie's estate.[1] These letters are a part of the court file and are available for inspection. *See* Virginia Code § 17.1-208.

Ruth Brammer Doughtie signed and attested her will on November 30, 2000. It was drawn by a lawyer, Ms. Jamison, and made self-proving. *See* Va. Code § 64.1-87.1. Noting that she had prearranged her funeral expenses, she directed her executor to pay expenses of her burial and of a memorial, and her debts, costs, and expenses (including transfer taxes imposed upon beneficiaries under the will). She made no gifts of specific items, though she indicated that she might leave a nonbinding list for her executor's guidance, and left her tangible personal property "to the person or persons, and in the order, set forth in Article III hereof for the disposition of the residuum of my estate."

In Article III, Ms. Doughtie provided for the disposition of "all the rest, and residue of my property, real or personal, of whatsoever nature." That article of the will, as it was signed on November 30, 2000, gave one-third of her residuary estate to a sister-in-law, Arlene Brammer, and one-third to a nephew, Gaylon Wayne Wright. (Mr. Wright had been, for some time, the person who assumed the lion's share of responsibility for assisting Ms. Doughtie in the affairs of everyday life.)

---

[1] I received letters from the following persons: Carlton B. Goode, K. Edward Goode, Ann G. Allison, Barbara G. Stoner, Regina W. Martin, Carolyn Brammer Lee, Arlene M. Brammer, Galen Wayne Wright, Sybil B. Winesett, Sharon Brammer Dunman, David F. Brammer, Lynn B. Pagans, and Kenneth J. Brammer. Some wrote more than once. A number of writers made it clear that, in addition to responding to my invitation, they were answering a question that the executor's lawyer had posed in a letter that is not part of the record.

Ms. Doughtie left the remaining one-third of her residuary estate to a brother, Wilford Jack Brammer ("Wilford"). Wilford died on December 2, 2004, approximately ten months before Ms. Doughtie's death.

When the will came into the executor's hands after Ms. Doughtie's death, Wilford's name had been obliterated by the use of an opaque correction fluid, such as "White Out," or "Liquid Paper." Another name had been handwritten above Wilford's name; that name had been obliterated in the same fashion.

A will, the Supreme Court of Virginia has explained, is "not intended or allowed to take effect until the death of the maker. It may be changed during life as often as the mind and purpose of the testator change." *Timberlake v. State Planters Bank*, 201 Va. 950, 957, 115 S.E.2d 39 (1960).[2]

Thus, in Va. Code § 64.1-58.1, the General Assembly set forth some of the ways in which a person can revoke all, or a portion, of a will or codicil. The first sentence in that statute is relevant here: "If a testator, having an intent to revoke . . . cuts, tears, burns, obliterates, cancels, or destroys a will or codicil, or the signature thereto, or some provision thereof, such will, codicil, or provision thereof is thereby void and of no effect." "Plainly, because the statute refers to acts directed to a `provision' of the testamentary document, it permits partial revocation of a duly attested will without further formalities." *Goriczynski v. Poston*, 248 Va. 271, 275, 448 S.E.2d 423 (1994).

Ms. Doughtie signed the will in her lawyer's office. She then kept it in her possession; it was found among her effects after her death. Under these circumstances, the law presumes in the absence of evidence to the contrary that Ms. Doughtie obliterated Wilford's name and that she did so intending to render her testamentary gift to him "void and of no effect." *Id.* at 275-76 . Though this presumption could be rebutted by evidence, *id.*, there is no evidence to contradict it. In fact, the testimony, rather than rebutting this presumption, supports it, and the court finds that Ms. Doughtie revoked her testamentary gift to Wilford.

Three credible witnesses testified, without contradiction, that in a conversation on October 3, 2005, a week before her car accident, Ms. Doughtie told them, quite specifically, how she planned, having outlived Wilford, to divide her residuary estate. The evidence is that Ms. Doughtie voiced her intentions firmly and clearly. A heavy majority of those who wrote

---

[2] A "testator" is a person who makes a will. The term "testator," as used in case law and statute, encompasses "testatrix," the feminine form of this Latin word.

letters to the court have asked me to find that her estate must be divided in accordance with these spoken wishes.

Can a court order such a division, if satisfied by the evidence that it knows what Ms. Doughtie said and meant? The answer, of course, is no.

A gift that is to take effect at the donor's death is called a "testamentary disposition," or "testamentary gift." *See Zink v. Stafford*, 257 Va. 46, 51, 509 S.E. 2d 833 (1999); *Bailey v. Kerns*, 246 Va. 158, 162, 431 S.E.2d 312 (1993); *Harrison on Wills and Administration* (2d), § 83, at 156, n. 15. By definition, the word "will" encompasses all testamentary dispositions. Va. Code § 64.1-45.

"Except when it would be inconsistent with the manifest intent of the legislature, the word 'will' shall extend to a testament, and to a codicil, and to an appointment by will, or by writing in the nature of a will, in exercise of a power; and also to any other testamentary disposition." Va. Code § 64.1-45. "A last will is defined to be the lawful disposing of that which any one would have done after death." *Selden v. Coalter*, 4 Va. (2 Va. Cas.) 533, 569 (1818) (The unattributed source of this definition was Sir William Blackstone's *Commentaries on the Laws of England*. In 1818, every lawyer or judge would have recognized Blackstone's words.) "The term 'will' is defined as 'the legal expression or declaration of a person's mind or wishes as to the disposition of his property, to be performed or take effect after his death'." *Thomas v. Copenhaver*, 235 Va. 124, 128, 365 S.E. 2d 760 (1988) (quoting *Black's Law Dictionary* 1433 (5th ed. 1979)).

Virginia's "statute of wills" is Va. Code § 64.1-49. *Berry v. Trible*, 271 Va. 289, 294, 297, 626 S.E.2d 440, 442, 444 (2006). That statute sets forth the minimum legal requirements for valid testamentary gifts: "No will shall be valid unless it be in writing and signed by the testator, or by some other person in his presence and by his direction, in such manner as to make it manifest that

the name is intended as a signature. . . ."[3] Ms. Doughtie demonstrated her understanding of this principle when, because she intended to alter her estate plans, she made an appointment to see her lawyer. In her conversations, she talked about changing her will. No one testified that Ms. Doughtie expressed the belief that she could make testamentary dispositions verbally. She had a written will, signed and acknowledged with legal formalities, at the time these discussions were taking place. In her 2000 will, she stated that she might leave a list to guide her executor in distributing personal property, "which I understand and intend shall have no legal effect."

As Justice Allen of the Supreme Court of Virginia wrote 161 years ago: "Fifty witnesses might be produced to prove the intent so to dispose of the estate; the moral conviction that she intended that for [her] will might amount to absolute certainty; and yet no court could listen to such proof in aid of the legal proof required by the statute." *Waller v. Waller*, 42 Va. (1 Gratt.) 454 at 478-79 (1845).

Answering the executor's petition for aid and direction, the court has now determined (a) that Ms. Doughtie effected a partial revocation of her will, canceling the testamentary gift to her brother, Wilford; (b) that the unrevoked portions of the written will remain in effect; and (c) that Ms. Doughtie's verbally-expressed wishes cannot have legal effect on the testamentary disposition of her property. What, then, is the executor to do about the share of the residuary estate that had been given to Wilford?

At the January 5, 2006, hearing, Ms. Jamison, as counsel for the executor, suggested that Virginia law might call for this the one-third of Ms. Doughtie's residuary estate to be distributed among her heirs and distributees at law, as if she had died intestate (without a will). Before the adoption of Va. Code § 64.1-65.1, that would have been the result. *See Adams v. Cowan*, 160

---

[3] The complete statute reads: "No will shall be valid unless it be in writing and signed by the testator, or by some other person in his presence and by his direction, in such manner as to make it manifest that the name is intended as a signature; and moreover, unless it be wholly in the handwriting of the testator, the signature shall be made or the will acknowledged by him in the presence of at least two competent witnesses, present at the same time; and such witnesses shall subscribe the will in the presence of the testator, but no form of attestation shall be necessary. If the will be wholly in the handwriting of the testator that fact shall be proved by at least two disinterested witnesses." According to early opinions of Virginia's highest court, "our statute of wills is a transcript of the statute of 29 Charles II [Ch. 3, the "Statute of Frauds and Perjuries," 1677], with the exception that it dispenses with the subscribing witnesses in cases of wills wholly in the handwriting of the testator, a provision not contained in the English statute." *Waller v. Waller*, 42 Va. (1 Gratt.) 454, 473 (1845); *accord Selden*, 4 Va. at 583.

Va. 1, 8-9, 168 S.E. 750 (1933). Even while reaching that result in *Adams,* however, the Court acknowledged that "the law frowns on partial intestacy." *Id.* at 8.

As the Supreme Court recently explained, "the only reason anyone can have for making a will is to change the devolution of his property from that prescribed by the statutes of descent and distributions. Hence there is a strong presumption that the testator intended to dispose of his entire estate, and courts are decidedly averse to adopting any construction of a will which leaves a testator intestate as to any portion of his estate, unless compelled to do so." *Baliles v. Miller,* 231 Va. 48, 57, 340 S.E.2d 805 (1986).

In 1985, the General Assembly significantly reduced the likelihood that courts will find themselves "compelled to do so," by adopting Va. Code § 64.1-65.1. The relevant subsection of that statute reads:

> B. Unless a contrary intention appears by the will and except as provided in § 64.1-64.1, if the residue is devised or bequeathed to two or more persons and the share of one fails for any reason, such share shall pass to the other residuary devisees or legatees in proportion to their interests in the residue.

The statute has three subparts. Subsection A provides that "unless a contrary intention appears by the will, and except as provided in § 64.1-64.1, if a devise or bequest other than a residuary devise or bequest fails for any reason, it shall become a part of the residue," and subsection C says that "notwithstanding the provisions of §§ 64.1-196.5 and 64.1-196.6 and unless a contrary intention shall appear in a will, if a testator makes a bequest, not exceeding the value of $25, to a legatee and such legatee refuses to take possession of such bequest then the bequest shall fail and becomes a part of the residue of the testator's estate." The statutes referred to in subpart C address disclaimers of interest in property by joint owners with survivorship rights (§ 64.1-196.5) and by trustees (§ 64.1-196.6). The statute mentioned in subparts A and B, § 64.1-65.1, applies when a beneficiary under a will is dead and is "a grandparent or a descendant of a grandparent of the testator."

Ms. Doughtie's will meets each of the requirements of this subsection. She devised and bequeathed the residue of her estate to two or more persons; nothing in the will suggests that the testatrix had an intention contrary to the provisions of § 64.1-65.1; and it is settled law in Virginia that a gift that has been revoked is one that "fails for any reason." *See Horne v. Horne,* 181 Va. 685, 690, 26 S.E.2d 80 (1943).

In *Horne*, the Supreme Court said that "the law is settled that where a gift is to a class and it fails as to one of the class because of death, revocation, or any other cause, the survivors of the class will take. *Saunders v. Saunders*, 109 Va. 191, 195, 63 S.E. 410 (1909), and authorities there cited." *Id*. That is, forty-two years before enactment of § 64.1-65.1, the Court found that the law was "settled": a gift that has been revoked is a gift that has failed for any reason.

The General Assembly is "presumed to be familiar with existing rules and case law when enacting legislation." *Charles v. Commonwealth*, 270 Va. 14, 19, 613 S.E.2d 432 (2005) (citing *Waterman v. Halverson*, 261 Va. 203, 207, 540 S.E.2d 867 (2001)); *Dodson v. Potomac Mack Sales & Service, Inc.*, 241 Va. 89, 94, 400 S.E.2d 178 (1991) ("We assume legislative familiarity with Virginia case law when the legislature enacts a statute which might impact upon that law."). When the legislature revises a statute after the Supreme Court has used a word in a specific way, "the General Assembly is presumed to use the language as judicially defined." *Williams v. Fairfax County Redevel. & Hous. Auth.*, 227 Va. 309, 314, 315 S.E.2d 202 (1984). Presumably, the rule that applies to revisions applies with at least equal force to new enactments, especially when the new laws arose enactments are upon the same or closely related subjects (*in pari materia*).

One of Ms. Doughtie's three residuary gifts "failed" "for any reason." Therefore, under § 64.1-65.1(B) and to avoid partial intestacy, the residue of the estate must be divided proportionally (which in this case means equally) between the two remaining residuary beneficiaries.

This result also is consistent with the Supreme Court's decision in *Sheltering Arms Hospital v. First & Merchants Nat'l Bank*, 199 Va. 524, 100 S.E.2d 721 (1957), a case involving construction of a will that was entirely in the testator's handwriting. Although the treatment of holographic and "word processed" wills will be different when it comes to additions and interlineations, there is no apparent reason to distinguish between a testator's obliteration, with intent to revoke, of a residuary gift in a holographic will, and a testator's obliteration, with intent to revoke, of a residuary gift in a word-processed will. *Also see Goriczynski*, 248 Va. at 276 ("despite the cancellations made in Article III, the will that remains is complete and has 'the finality of testamentary intent.' The will, still carrying the label of 'Last Will and Testament,' provides for payment of debts, expenses, and taxes; names a personal representative with specified powers . . . and leaves the residue of the estate to named [beneficiaries]. Indeed, the will carries out the testator's manifest intention, that is, he did not want his estate to pass to his heirs.")

In summary, answering the executor's petition for aid and direction, the court has concluded:

1. That Ms. Doughtie revoked the portion of her will that gave a portion of her residuary estate to her brother Wilford Jack Brammer;

2. That the testatrix revoked only the portion of the will making a testamentary gift to Wilford; the rest of the will remains in effect and binding upon the executor;

3. That the wishes that Ms. Doughtie expressed verbally cannot have legal effect on the testamentary disposition of her property; and

4. That the residuary estate is to be divided equally between the two remaining residuary beneficiaries, Arlene Brammer and Gaylon Wayne Wright.